IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| RECETAS POR MENOS, INC.<br>PUERTO RICO PHARMACEUTICAL, INC.<br><br>    Plaintiffs<br><br>Vs.<br><br>FIVE DEVELOPMENT CORP.;<br>PMC MARKETING CORP. ; YMAS<br>INVENTORY MANAGEMENT, CORP.,<br>RAFAEL PEREZ DIEZ, JANE DOE<br>and the conjugal partnership they form;<br>JOHN DOE and JANE DOE and the<br>Conjugal Partnership they form;<br>SALEH YASSIN, SUSAN ROE,<br>and the Conjugal Partnership they form;<br>JOHN DOE, RICHARD ROE;<br>C0RPORATION ABC; INSURANCE<br>COMPANY DEF,<br><br>    Defendants | CIV. NUM. 02-1935(SEC)<br><br>FOR: ANTI TRUST<br>VIOLATIONS<br>PRELIMINARY,<br>PERMANENT<br>INJUNCTION |

## THIRD AMENDED VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs Recetas Por Menos, Inc. ("RPM") and Puerto Rico Pharmaceutical, Inc. ("PRPI") through their undersigned attorneys, and respectfully **ALLEGE** and **PRAY** as follows:

### I. JURISDICTION

1.    This Honorable Court has jurisdiction of the instant action, pursuant to Sections 1 and 2 of the Sherman Antitrust Act (15 U.S.C. §1 & §2); Section 4 of the Clayton Act (15 USC § 15(a)); and Section 16 of the Clayton Act (15 USC §26).

2.    This Honorable Court has pendent jurisdiction over local laws, and the following local laws are invoked: The Civil Code of Puerto Rico 31 LPRA §§ 2991,

2992, 2994, 2995, 2996, 3052, 3373, 3375, 3451, 3472, and 5141 ("Article 1802"); the General Law of Corporations of Puerto Rico, 14 LPRA §2601 thru 3455 and the Anti Monopoly Law of Puerto Rico, 18 LPRA § 257-276.

3.  The proper venue for this case lies in this Court as the causes of action took place in Puerto Rico, 28 USC §1391(b) and because the defendants are found in Puerto Rico, (15 USC §15(a))

## II. PARTIES

4.  Plaintiff RPM is a duly registered for profit corporation organized and existing under and by virtue of the laws of Puerto Rico. Its sole stockholder is Joseph J. Mukamal.

5.  Plaintiff PRPI is a duly registered for profit corporation organized and existing under and by virtue of the laws of Puerto Rico. Its sole stockholder is Joseph J. Mukamal.

6.  Co-defendant Five Development Corp., ("FIVE") is, on information and belief, a duly registered for profit corporation organized and existing under and by virtue of the laws of Puerto Rico.

7.  Co-defendant Rafael Pérez Diez is an administrator of FIVE, and as such is responsible for the corporation's actions as set forth in 10 L.P.R.A. 265.

8.  On information and belief, Rafael Pérez Diez and Jane Doe form a conjugal partnership, which is legally responsible for the actions of Rafael Pérez Diez.

9.  Co-defendant PMC Marketing Corp. (PMC) is a duly registered for profit corporation organized and existing under and by virtue of the laws of Puerto Rico.

10.  Co-defendant YMAS Inventory Management Corp. (YMAS) is a duly registered for profit corporation organized and existing under and by virtue of the laws of Puerto Rico, which is affiliated with PMC. (We will refer to PMC and YMAS

collectively as El Amal, or the El Amal Group, because that is how the entity has been identified to the Puerto Rico Department of State.)

11.  Co-defendant Saleh Yassin is the administrator of El Amal and as such is responsible for the corporation's actions as set forth in 10 L.P.R.A. 265.

12.  On information and belief, Saleh Yassin and Susan Roe form a conjugal partnership, which is legally responsible for the actions of Saleh Yassin.

13.  John Doe and Richard Roe are defendants, unknown at the present time, who may be liable to plaintiffs.

14.  Corporation ABC is a defendant, unknown at the present time, which may be liable to plaintiffs.

15. Insurance Company DEF is an insurance company, the identity of which is unknown to plaintiffs at the present time, which may provide coverage for the actions set forth in this Complaint.

### III.  FACTS

16.  RPM entered into a lease agreement with FIVE Corp. on May 19, 1997 to lease space in the Villa Fontana Shopping Mall.

17.  RPM was to pay, and, in fact did pay, a monthly rent of $1,400.00 during a term of five years.

18.  On information and belief, after approximately three and a half years, FIVE began leasing space in the same shopping mall to El Amal Group. EL Amal Group made it a condition of negotiating for such space, that existing tenants, including RPM, be removed, a condition to which FIVE agreed.

19.  In furtherance of that conspiracy, Mr. Pérez Diez from FIVE indicated to RPM that FIVE wanted to cancel its lease agreement with RPM.

20. El Amal Group opened a pharmacy in the space it leased from FIVE in the Villa Fontana Shopping Center, in October 2001.

21. El Amal Group leases five times the amount of space that RPM leases.

22. FIVE indicated it wanted to buy the rights to RPM's Certificate of Need and Convenience. (Certificado de Necesidad de Conveniencia, or "CNC".)

23. Mr. Pérez Diez represented that he was acting as intermediary for El Amal Group when he indicated his interest in acquiring the CNC of RPM.

24. RPM responded that it was only willing to negotiate a buy out of the lease agreement, but that offer was rejected.

25. Given RPM's business situation at the time, RPM offered to sell its rights to the lease and the CNC for $673,712.00 plus the actual value of the inventory and equipment, which was approximately $350,000.

26. The full payment would have been over $1,000,000.00.

27. The lease agreement provides that upon the completion of the five year term, RPM shall have the right to renew the lease, but if unable to reach agreement on the rent amount and the term, RPM shall be given the opportunity to meet the best offer made by any third party interested in renting or purchasing the space, which is the object of the contract.

28. In December 2001, six months prior to the expiration of the lease, RPM communicated its desire to exercise its right to extend the lease to FIVE and asked what the proposed rent would be.

29. On January 21, 2002, FIVE responded that it was willing to lease the space for $25.00 a square foot (almost four times the existing rent) and with the express condition that RPM not operate a pharmacy.

30. The lease contract FIVE proposed provided for an overage of 5% of net sales at a base from which RPM would have had to begun paying immediately.

31. On information and belief, El Amal Group requested that FIVE make these demands of RPM.

32. Counsel for RPM wrote to FIVE and requested evidence of the bona fide offer made by a third party so that RPM could respond to the same.

33. FIVE, in direct contravention of the Lease Agreement's terms, and with temerity, ignored counsel's request, despite the fact that FIVE in fact had a bona fide offer made by a third party at the time.

34. At that point, RPM made a good faith offer of $1,750.00 monthly rental, which offer was calculated on increases based on a rate of inflation of 5% per annum over the $1,400.00 per month originally agreed upon, amounting, at the end of the five (5) years of the initial lease, to $1,750.00 per month.

35. In furtherance of its conspiracy with El Amal, Mr. Pérez Diez called RPM and informed them that it could not renew the lease so long as RPM operated a pharmacy.

36. Mr. Pérez Diez indicated that his contract with El Amal Group required him not to allow any pharmacy to operate at Villa Fontana Shopping Mall.

37. On March 3, 2002, counsel for FIVE then sent RPM a letter confirming that RPM had to vacate by June 1, 2002 unless RPM agreed to the terms of FIVE's January 21st letter. At this time, of the nine store segments in the Villa Fontana Shopping Mall, four were occupied by El Amal pharmacy, one by plaintiff and the other four were empty.

38. In May 2002, FIVE was negotiating a rental contract with La Reina de Cayey, Inc. The contract provided that La Reina de Cayey, Inc. would pay $10.00 a

square foot for 9, 200 square feet of space with a 2% overage beginning at $5,000,000.00 annual sales.

39. If plaintiffs had been offered the contract that Reina de Cayey was offered, plaintiffs would have accepted it.

40. With the additional space, plaintiffs could have competed head to head with El Amal.

41. On June 10, 2002, RPM was served with a Complaint to evict the corporation from the premises. A judgment of eviction was obtained by FIVE by virtue of a misrepresentation to the Superior Court, Carolina Section, in which they did not inform the court that in May 2002, FIVE had received an offer from La Reina Del Caribe, Inc., to rent space in the Villa Fontana Shopping Center, including the space of RPM. RPM's was entitled by the existing lease agreement to match the offer made to La Reina del Caribe, Inc.

42. RPM will be vacating the premises on or about April 30, 2004, because, pursuant to its conspiracy to remove RPM from the Villa Fontana Shopping Center, in October 1999 FIVE falsely told RPM it was planning to demolish the balance of the Shopping Center, where RPM was located. RPM then immediately took steps to acquire another location, build a stand-alone store location, and so seek to obtain the transfer of its CNC to the new location. RPM now has its CNC for the new location, and is awaiting delivery of the telephone lines, to be able to move. Furthermore, FIVE has not desisted from the eviction action, in which there is pending issuance of an order of eviction, and a motion to reopen the case because of fraud on the court, filed by RPM.

43. RPM purchases a large part of inventory from PRPI, an affiliated corporation.

44. PRPI supplies inventory to RPM on the basis of a guaranteed price of 20% of RPM gross sales for RPM, and the balance of 80% of gross sales, to Puerto Rico Pharmaceutical, Inc. Ownership and financing of all of RPM's inventory is provided by PRPI.

45. The requirement that RPM move will cause RPM damages because its sales volume will decline. Similarly, the requirement that RPM move causes PRPI damages due to the loss of sales, because of the lower sales volume RPM will experience in the new location.

46. As a result of the relocation, RPM's going concern value has been diminished.

47. As a result of the relocation and diminished volume of sales of RPM, PRPI's going concern value has been diminished.

### FIRST CLAIM FOR RELIEF

### Violation of Section 1 and Section 2 of the Sherman Antitrust Act
### (15 USC §1 & §2)

48. Plaintiffs reallege all the allegations contained in the preceding paragraphs with the same force and effect as though more fully set forth herein at length.

49. El Amal Group exercises monopolistic and/or oligopolistic power in the relevant market in which RPM and El Amal Group are located and compete.

50. El Amal Group and FIVE have colluded with the express purpose of putting RPM out of business and eliminating competition in the relevant market.

51. The goods sold, pharmaceutical products, are purchased in interstate commerce.

52. El Amal Group's abuse of its monopoly power constitutes an unreasonable attempt to monopolize, which, when conspiring with FIVE Corp. to

exclude plaintiff from the market, violates Sections 1 and 2 of the Sherman Antitrust Act, 15 U.S.C. § 1 and § 2, which entitles RPM to treble damages pursuant to Section 4 of the Clayton Act (15 USC §15(a)),

53. FIVE's refusal to do business with RPM, and actions to evict RPM, at El Amal Group's request with the knowledge that said refusal would serve to limit competition in the area, violates the Sherman Antitrust Act § 1 and § 2.

54. There are no legitimate business reasons to sustain FIVE's unjustified refusal to deal with RPM.

55. FIVE's condition that RPM leave the pharmacy business in order to do business with FIVE constitutes an unreasonable restraint of trade and has caused and will cause RPM more than a million dollars in damages. The amount of damages must be trebled in accordance with the antitrust statutes, 15 USC §15(a).

### SECOND CLAIM FOR RELIEF

Violation of § 1 and § 2 of the Sherman Act

56. Plaintiffs reallege all the allegations contained in the preceding paragraphs with the same force and effect as though more fully set forth herein at length.

57. The efforts of El Amal Group and FIVE constitute a combination of entrepreneurs to harass and deter their competitors from having "free and unlimited access" to the agencies and courts, to defeat that right by massive, concerted, and purposeful activities of the group as ways of building up El Amal Group's empire and strangling competition by bringing baseless suits to evict plaintiff.

58. FIVE's eviction case is objectively merit less and has been filed and pursued with the sole purpose of burdening RPM with the cost of defending frivolous litigation.

59. FIVE's eviction case has caused RPM damages in excess of $100,000.00.

### THIRD CLAIM FOR RELIEF

Injunctive Relief Pursuant to the Section 16

Of the Clayton Act (15 USC §26(a))

60. Plaintiffs reallege all the allegations contained in the preceding paragraphs with the same force and effect as though more fully set forth herein at length.

61. Given that the eviction case is a sham, filed in direct contravention of the explicit terms of the contract between FIVE and RPM and for the sole purpose of unreasonably restraining trade, FIVE should be enjoined from pursuing that litigation.

62. Furthermore, FIVE should not only be enjoined from pursuing its objectively meritless eviction case, but affirmatively enjoined to give specific performance to the terms of its contract with RPM because its refusal to do so is based solely on its conspiracy with El Amal Group to monopolize the relevant market, and unreasonably restrain trade in violation of the antitrust statutes.

63. Defendants El Amal Group and FIVE should be enjoined from illegally colluding to restrain trade unreasonably and thus to eliminate competition in the relevant market.

### FOURTH CLAIM FOR RELIEF

Violation of 10 L.P.R.A. 257 et seq.

64. Plaintiff realleges all the allegations contained in the preceding paragraphs with the same force and effect as though more fully set forth herein at length.

65. FIVE's actions, as described above, also violate 10 L.P.R.A 262, which provide, in pertinent part that "it shall be illegal for any person to rent ... with the condition or understanding that the lessee shall not be permitted to use or enter into a specific form of commerce, which commerce is being engaged in by a competitor of that lessee with the result of such condition or understanding shall be to substantially reduce competition or tend to create a monopoly." Those actions have caused and will cause RPM Damages in excess of $1,000,000.00, which damages should be trebled.

### FIFTH CLAIM FOR RELIEF

### Specific Performance

66. Plaintiffs incorporate as if realleged the foregoing paragraphs with the same force and effect as if herein set forth.

67. Under the applicable provisions of the Puerto Rico Civil Code, the Lease Agreement of May 19, 1997 is an agreement enforceable by its own terms.

68. Defendant FIVE has refused to abide by the terms of the Lease Agreement, and is seeking to evict plaintiff there from.

69. The Lease Agreement, by its own terms, provides a formula for ascertaining the value of the rent and the term, for any renewals.

70. Defendant, FIVE, refused to even attempt to comply with its obligations, and in fact, in order to obtain the eviction of RPM, withheld essential information from the court, of existing lease negotiations with third parties, in order to obtain the eviction it wants.

71. Under Puerto Rico law, the aggrieved party can choose between resolution of the contract, or specific performance with damages in either case.

72. Plaintiffs have chosen specific performance and assert they have been damaged to date by defendant's failure to comply with the contract, by an amount in excess of $100,000.00.

## SIXTH CLAIM FOR RELIEF
### Article 1802 - P.R. Civil Code

73. Plaintiffs incorporate as if realleged the foregoing paragraphs with the same force and effect as if herein set forth.

74. As a result of the before mentioned acts and omissions, El Amal Group has tortiously interfered with the contractual relationship between FIVE and RPM.

75. As a result of the tortious interference with contract RPM has suffered damages in an amount exceeding $1,000,000.00.

**WHEREFORE**, in view of the foregoing, plaintiffs respectfully request that judgment be entered against the defendants jointly and severally, as follows:

a. Ordering the defendants to pay plaintiffs an amount in excess of one million dollars as per the First Claim for Relief ($1,000,000.00) said sum to be trebled in accordance with the Antitrust Laws;

b. Ordering the defendants to pay plaintiffs an amount in excess of One Hundred Thousand dollars as per the Second Claim for Relief ($100,000.00) said sum to be trebled in accordance with the Antitrust Laws;

c. Ordering FIVE to cease and desist from pursuing its efforts to evict RPM;

d. Ordering FIVE to perform specifically in accordance with the terms of its Lease Agreement with RPM;

e.  Enjoining PMC Marketing Corp. and YMAS Inventory Management Corporation and FIVE from colluding to restrain trade unreasonably and to weaken competition;

f.  Ordering the defendants to pay plaintiffs an amount in excess of one million dollars as per the Fourth Claim for Relief ($1,000,000.00) said sum to be trebled in accordance with the Antitrust Laws;

g.  Ordering the defendants to pay plaintiffs no less than the sum of One Million Dollars as per the Fifth Claim for Relief ($1,000,000.00)

h.  Ordering the defendants in the respective cause of action to pay interests, costs, and attorneys fees; and

i.  Granting such other and further relief as may be just and proper.

**RESPECTFULLY SUBMITTED.**

**I HEREBY CERTIFY THAT** on this date, I electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to the following to: Guillermo A. Macari-Grillo, Esq., Enrigue G. Figeroa-Llinas, Esq., and Guillermo J. Bobonis, Esq., Bobonis, Bobonis & Rodriguez Poventud.

In San Juan, Puerto Rico this 26th day of March, 2004.

**BORGES LAW CENTER, P.S.C.**
Union Plaza Building, PHA
416 Ponce de León
Hato Rey, Puerto Rico 00918

_____
**EDWARD M. BORGES**
USDCPR #109505

**LAW OFFICES OF
JANE BECKER WHITAKER**
PO Box 9023914
San Juan, Puerto Rico 00902-3914

_____
**JANE BECKER WHITAKER**
USDCPR Bar Number 205110

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| **RECETAS POR MENOS, INC.** | - | CIV. NUM. 02-1935 (SEC) |
| Plaintiff | - | **FOR:** ANTI TRUST VIOLATIONS PRELIMINARY, PERMANENT INJUNCTION |
| v. | - | |
| **FIVE DEVELOPMENT CORP.; PMC MARKETING CORP. ; YMAS INVENTORY MANAGEMENT, CORP.; RAFAEL PEREZ DIEZ; JANE DOE and the Conjugal Partnership they form; SALEH YASSIN, SUSAN ROE, and the Conjugal Partnership they form JOHN DOE, RICHARD ROE; C0RPORATION ABC; INSURANCE COMPANY DEF,** | - | PLAINTIFF DEMANDS TRIAL BY JURY |
| Defendants | - | |

## UNSWORN STATEMENT UNDER PENALTY OF PERJURY

I, Joseph J. Mukamal, of legal age, single, executive, and resident of San Juan, Puerto Rico, make this unsworn statement under penalty of perjury:

I have read the "Amended Verified Complaint" and to the best of my knowledge and its content is accurate.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 26 th, 2004.

_[signature]_
JOSEPH J. MUKAMAL